Your honors, may it please the court, my name is Rick Kornfeld. I represent the plaintiffs. He brought this case over double billing by the St. Louis Post-Dispatch, which sent him and other subscribers successive bills for specific terms of dates. Let me start you with what for me is the obvious question, because we just dealt with the legal principle at length for some time. What, in your view, is the ascertainable loss for MMPA purposes? We have an expert witness, Justin Regas. Just tell me in plain English. Oh, he calculated the value of the overlapped days that subscribers paid for. He had access to their database. Put in dollars. He calculated the dollar value of the overlapped days that each subscriber who had paid an overlap bill had paid. But the record showed that ultimately, though, no one paid for a paper they didn't receive. That's right. It was just a timing issue the way I look at it. In other words, there was an overlap, but then the next month that was resolved. No, Your Honor. That's their position, relying on their internal accounting, subscription accounting program, which they call DISCUS. They argued that subscribers never paid twice, but that was their only evidence. They say they had an account for... What's your contrary evidence, other than this expert putting a value on the timing? The contrary evidence is, first of all, they're drawing an inference. Contrary evidence is someone had to pay for more papers than they got. Right. That's first contrary evidence. Okay, that they paid more because of the overlap bills. No, no, no, that's not the question. My question is, where's the evidence? I have been assuming, Judge Kovas' question assumed, there is no evidence that someone paid for a paper they didn't get. Contrary evidence to that, that's first. Let's start there. They paid twice. It's not that they paid for... Just answer the question. Okay, the evidence is... It's the evidence that someone paid for a paper they didn't receive. If I could just clarify the question, Your Honor. No, no, you can't. Answer the question. They paid for papers they received, but they paid twice. No, no, they paid twice. They paid twice for papers they received. All right, where's the evidence of that? Okay, the evidence, first of all, is the obvious thing that they received invoices that had overlapped dates. But that's not obvious, because they basically, in the DSCA system, they had basically a revolving credit account that the paper would draw from when they delivered a newspaper, right? So there was money, monies held by the newspaper. But as I understand the record, the newspaper would charge people based on when the paper was delivered. Your Honor, what they're doing is drawing an inference from the fact that they have a daily rate that they calculated by themselves. They don't tell subscribers about that. But you're the party, you're the non-moving party with the obligation to come forward with contrary evidence. Yeah, and we have evidence sufficient to draw a contrary inference. Well, no, wait. DSCA, you can say it's not reliable, but it purports to say what they've argued. What evidence do you have that purports to establish that someone paid for a paper they didn't get? They paid twice for papers. It's not that they didn't. That's the same thing. Okay, Your Honor. Just give me a record cite. Okay, when a subscriber would complain about an overlap. Give me a record cite for someone who paid for more papers than they received. That's what paying twice is. They paid twice for the same paper, not for an additional paper. Give me someone who said that under oath or a document that establishes it. Okay, well, there's what their in-house lawyer wrote to the Missouri Attorney General. I know that. That's not evidence of this. Yes, with respect, Your Honor, it is, because that was a subscriber who complained about. They're willing to be. They'll grease the squeaky wheel. That's not affirmative evidence that the complaint was sound. They didn't just grease the squeaky wheel. Their witness, their 30 v. 6 witness. Would you please get down to the evidence? I've asked you for ascertainable loss. You threw something out that's sort of undefinable. I asked you to put a number on it, and you're off somewhere else. As far as I can tell, you are doing nothing as the non-moving party to prevail here. So, Your Honor, with respect, I submit we have provided evidence sufficient to draw an inference. Okay, just say I'm relying on the records cited in my brief. That's all I've got. Well, obviously, we have the records cited in our brief. What's the value of overlapped days? If I was a subscriber, and, first of all, I doubt that there's a contract that specifies that it has to come in a particular amount of days, there's an expectation created by the billing, I'll admit that. Well, our position is that that is a unilateral contract. You get a bill that says- But my first question was ascertainable loss under MMPA. Okay, Your Honor. This is not a breach of contract case. Your Honor, in the court below, the defendant contended that you could determine whether the plaintiff lost money by taking the total charges, his total charges over six years, and comparing that to his total payments. And they said that it showed that he paid less than the value of what they say are their charges. But we show that there were mistakes. Okay, give me a record cite. Okay. That's it. Pages 786 through 789. Excuse me, Your Honor. 786 through 789 of the joint appendix document, that's paragraph 21 of our response to their statement of material facts. In addition, we have testimony- That suggests a layered narrative. I'm sorry? When you say it's our response to something, that suggests you're citing a lawyer's narrative. What we're citing is our response with the evidence that we cited in the response to the statement of material facts, which is what we're required to do. The evidence is what you just cited? It's in there. The evidence, that's the discussion of the evidence in our response to the statement of material facts. Your Honors, I would also like to- If you said, go read something, tell me what you said. Just give me a cite to what you told me to go read. I thought I just did, Your Honor, pages 786 through 789. Yeah, and then you described that as paragraph 21 of our response. Yes. And then I said, well, what is that? And you said, well, we told you in paragraph 21 what to read. That's a description of the mistakes they made in their calculation that shows that when you correct those mistakes, the plaintiff paid $90 more over six years than the value of what they say are the total charges. In addition- I thought at one time you got it down to $11.90. Well, there are different aspects of it, but it was $90 when you look at all of their mistakes. Didn't you yourself say at one point to the district court it was $11.90? We said that out of the $15 that they said they took to pay for his digital. But if you look at all of the mistakes, it totals $90. In addition, and I'm running out of time, but there was testimony by their witnesses that said that when plaintiffs- when subscribers paid overlapping bills, they paid twice. One was Courtney Wright. That's at pages 805 to 806 of the record. In their brief, they said that Mr. Wright was asked to agree with our theory of the case. He was, and he did agree. He said, yes, subscribers who paid overlapping bills paid twice for the same issue. Also, their witness, Pat Helfrich, that's at page 806. She agreed that a subscriber who complained about overlaps was charged twice for the same dates. Now, elsewhere, they followed- these were their employees and their consultant. Elsewhere, they said, oh, nobody ever paid twice. But on summary judgment, you have to interpret those conflicts in testimony in our favor. I'm out of time. I had hoped to reserve two minutes, but thank you for your attention, Your Honor. Thank you. May it please the Court, Mr. Kornfeld. I'm Joseph Martineau from Lewis Rice. I represent the St. Louis Post-Dispatch and Lee Enterprises, the defendants in this case. Plaintiff's case is about, and I think the Court has recognized this, plaintiff's case is about allegations that he paid twice. Well, let's start where the argument's been. Is he wrong that they showed actual dollars paid for papers not received? He is. And what he's wrong about is his whole case is premised on the notion, Your Honor, that every time they paid an overlapping bill, they paid for papers they didn't receive. I'll direct you to Wright's testimony, and you know the question he answers yes to. Why isn't that enough to survive summary judgment? Well, I think the point on that, Your Honor, is that they unequivocally admitted in their response to the summary judgment motion, the 7.401E statement that we made, that the software DISCUS that is used by the Post-Dispatch to charge subscribers makes it impossible for a subscriber to pay twice for the same newspaper. And they offered no evidence whatsoever that anything was inoperable or wrong or, you know, that DISCUS wasn't working right. Counsel, you know how the question ends. The question ends, the customer is paying for newspapers that the customer paid for in response to the first bill, correct? And Mr. Wright says yes. Is that enough to get by summary judgment? No, Your Honor, not in light of their clear admission, unequivocal admission in response to the motion for summary judgment, that DISCUS will not charge twice. So even if the witness was mistaken, and if you read his testimony in context, he clearly says the same thing that I'm saying, that it is impossible, technically impossible, for DISCUS to charge a subscriber twice for the same newspaper. And that's the case that they brought. What does he say? What does he mean by that statement? I think he was confused. I mean, he also says, if you look at the testimony that we point out in our brief, he also says it's technically impossible for that to occur. Now, as we cited in our brief, and I think this is important. Counsel, if we get to credibility land, you know the Supreme Court has per curiam reversed some circuits for granting summary judgment where credibility is at issue. Are we judging the credibility of Mr. Wright's yes in response to the question? No, because I think you have to look at the full context of the testimony, number one. And number two, we do cite in our brief the Scott case, the Supreme Court case, that where evidence is purporting to contradict something, and it's blatantly contradicted by something objective. And in that case, it was a video. But there are other cases dealing with the same types of circumstances. There's no evidence whatsoever that DISCUS would ever charge a subscriber twice for the same newspaper. So therefore, even if that testimony is inconsistent, it must be disregarded because it's blatantly contradicted by objective evidence, namely the DISCUS software program and their admission in response to the summary judgment that DISCUS can only charge once for a newspaper. Are the bare words, the plain words of the admission in your brief? I'm sorry? Were the plain words of the admission in your brief? Yes, I'll read them right now. Well, are they on the page of your brief? They're in our brief, I'm sure. Well, it's PDF. We can word search it. So go ahead and read the words. Go ahead and read the words. Use quotes and tell me your quotes. These are all quotes. I'm reading exact quotes. The post-dispatch maintained a single running account for plaintiff from 2001, continuing throughout his home delivery subscription. Paragraph 4, the payments plaintiff made to the post-dispatch were posted to his account. Paragraph 6, on Sundays, an amount equal to the daily rate for each newspaper during the preceding week was deducted from plaintiff's account. Paragraph 7, DISCUS, the post-dispatch's circulation system, deducts the applicable rate for a subscriber's account for each newspaper once and only once. And Paragraph 8, DISCUS does not deduct the applicable rate twice for a single newspaper. And as Judge Schelp clearly recognized... Now wait, that is what you asked to be admitted to, right? And it was all admitted, yes. Okay, well, tell me what the other side said. Did they say admitted, just one word? They said uncontroverted. And then they have an explanation as to why they contended to be immaterial. And I'm not going to read the long exposition as to why they said it was immaterial. It's absolutely material. Now, the one thing that I would like to respond to, too, is... Now, what's the best quote? You say there are contrary quotes by Wright. What's the best contrary quote by Wright to her yes to, yeah, there's double billing? And you're also aware that Wright later says the overlap days are not for free. Right. Again, if it's in your brief, you can direct me. It's in my brief. It would be on page 15. Page 15 of the red brief? Your brief? Yes. Okay, I'm on page 15. Go ahead. I have bullet points. Just all those? Any of those, you say? Any of those, right. Okay, good. The subscriber's accounts were never charged, never double charged, never charged twice for the same day. That was Don Hesse. Are any of these Wright? Or are all these Hesse and Helfrich? I think they're all Hesse and Helfrich. Oh, boy. So we're getting back toward credibility land a little bit. One of their witnesses against... One of your witnesses against... No, here it is, Your Honor, page 18. Okay, page 18. Mr. Wright, clearly, and I'll read his language. Yeah, sure. My brief. It's technically not possible for double billing to have a double charging effect on a subscriber. That was Mr. Wright's testimony. It's on page 18 of our brief. Thank you. So, again, I mean, I don't think there's any evidence that would support the notion that DISCUS doesn't do exactly what we say DISCUS does. And it doesn't charge somebody twice for the same newspaper. And that's the case. That's their case. Not that, oh, he was overcharged over a period of time or anything like that. And why aren't they claiming, oh, he was overcharged over a period of time? Keep in mind the context of this case. It's a class action. And there's no way they could ever pursue a class action if they limited their case to this subscriber was overcharged over time. Because what are we going to do? Analyze hundreds of thousands of subscribers and what they paid? No. What, in fact, maybe there was a mistake in what he paid and what he was charged. But that wouldn't take them to a class action. And it's not the case that they brought. We defended the case that they brought, which is Mr. Goldsmith and other subscribers paid twice whenever they had an overlapping bill. And as the brief and the record clearly shows, that never did happen. They never paid twice for the same newspaper, even if they were overlapped. So money, as Judge Koba said, it's kind of like a revolving account. It just stays there and goes to the next newspaper. Sometimes there were gaps. If a subscriber had a missing paper or something like that, there'd be a gap instead of an overlap in the dates of the bills. So therefore, it's just, they've got no ascertainable loss to answer Judge Loken's question. They've got no damages. Judge Shelp was absolutely right in his analysis of the case and in entering summary judgment. We would ask this court to affirm that summary judgment. And unless there are any questions, further questions, I will sit down. Thank you very much. Thank you. Well, the case has been thoroughly briefed and argued.